Shipman, G. J.
This is a bill in equity based upon the •alleged infringement of letters patent No. 131,201, dated September 10, 1872, for an improvement in overshoes, and, also, of letters patent No. 166,669, dated August 10, 1875, for an improvement in rubber boots. Bach patent was granted to Isaac B. Williams, one of the plaintiffs. The •other plaintiff is the exclusive licensee under each patent.
Number 131,201 was designed to be an improvement upon the well-known rubber and cloth gaiter overshoe, called the “Arctic,” and which was fastened by a buckle over the instep. The shape of the shoe was that of the brogan. The Arctic was not perfectly water-tight, for, when worn in deep snow, water would find its way between the vamp and the quarter. The improvement upon the Arctic shoe consisted in overlapping the vamp and the quarter beneath the rubber foxing, and extending the vamp and quarter so as to form bellows-like, water-excluding flaps, folded on each side of the instep, and buckled together over the instep. I do not consider the place of overlapping to be a part of the invention. The *684 overlapping was underneath the foxing, almost as a matter of course, but the invention would be the same if the foxing did not exist.
The patentee says, in his specifications: “My invention relates to that class of cloth and rubber gaiters which arc provided with flaps and buckles, and it consists in a peculiar construction of certain double water-proofed jointed flaps, so arranged that the flap tongue passing over the instep will draw equally upon the sides of the quarter when buckled to the foot, and render the gaiter water-proof at all points adjacent to the flap.” The description which is contained in the patent consists mainly of a reference to the drawings.
The claim is as follows: “As a new article of manufacture, a cloth and rubber gaiter overshoe, having a double water-proof flap, composed of extensions of the vamp and quarter, folded on each side of the instep, and provided with a buckle and flap tongue, which are arranged to draw equally on each side of the quarter across the instep, substantially as described.”
Before the date of this invention, an English patent, dated January 23, 1856, had been granted to Stephen Norris for an improvement in leather shoes. His improvement consisted in the insertion of a gore or gusset between the vamp and quarter, which folded upon itself inside the shoe, and excluded water to a certain extent. The shoe was not perfectly water-proof, because the truncated apex of the gore at the point of union of vamp quarter and gore did not form a folded or an overlapping joint with vamp or quarter. The union of the three pieces of leather was made by sewing, and there was no turning of the water by a fold of the leather so as to exclude the admission of moisture to the foot. The great effort upon the part of the defendant was to limit the Williams patent, in view of the Norris invention, to the exact cut of vamp and quarter, and of their extension into a flap tongue, which is shown in the drawings. The defendant construes the patent to be for an overshoe having the peculiarly constructed water-proof jointed flaps, shown in the drawings, composed of extensions of both vamp and quarter, *685 folding on the instep, and having a buckle and the flap tongue extensions which draw as described.
It is true that Williams turns out not to have been the pioneer in water-exeluding shoes by means of jointed flaps, as he supposed himself to have been. But he was the pioneer in his department, that of making an Arctic shoe, or a shoe of the class provided with flaps and buckles, water-proof by means of overlapping, jointed flaps. And the patent is not to be limited to the precise shape of the “cut” of each part of the extension which is shown in the drawings, but it covers, also, such other forms of cut which are substantially like the pattern shown and described, and which accomplish the same result. Another person cannot properly get the advantage of Williams’ overlapping vamp and quarter by merely varying the cut of vamp or quarter, or the form or shape of overlapping joint, or the shape of the tongue. The patent is by no means for any peculiar shape of fastening device.
The defendant has made and sold a “snow-excluder,” which has double-jointed flaps folded on each side of the instep, made water-proof by an overlapping of the vamp and quarter beneath the foxing, and provided with a buckle and tongue attached to one of the flaps, which are arranged to draw in the manner specified in the patent, but it is claimed that these shoes are not an infringement, because — First, the “cut” of the quarter is just like that of the quarter of the defendant’s old-fashioned Arctic, and, therefore, there is no extension of the quarter, and no flap tongue; second, the cut of the vamp extension is substantially like that of the Norris gore, and not like that of the Williams extension, which is admitted to have been a patentable novelty. The shoe is, therefore, a union of the Arctic quarter and the Norris gore. The defendant’s shoe has the general external appearance of the Arctic, and its quarter has the cut which the defendant used upon its Arctic shoes. It is, therefore, true that its quarter has no extension. This is, however, a verbal criticism. The waterproof jointed flap, uniting the overlapped vamp and quarter, and folded on each side of the instep, is the same flap in each shoe. The defendant’s quarter is a wide one, and extends *686 well in front of the ankle, and its front edge is at right angles-with the upper line of the foxing, so that at the instep the quarter is a broad piece of cloth, and the fastening is effected by a strap inserted in a slit in the quarter. In the plaintiff’s shoe that part of the quarter which joins the foxing comes less further forward of the ankle than in the defendant’s shoe. The part of the quarter which is extended over the instep is, therefore, narrowed, and becomes a flap tongue provided on one side of the shoe with a buckle, by which the shoe is fastened.
Another result of the different shapes of the quarter is that in the plaintiff’s shoe the bellows flap can be turned back smoothly upon the outside of the shoe. The fold of the flap, and the front and lower edge of the quarter, are at the same point. In the defendant’s shoe, in consequence of the width of the quarter, the flap is not turned smoothly backward, and dirt or sand cannot easily be brushed out of the fold. These two differences do not constitute any material or substantial difference in construction or operation.
The second alleged point of difference is the one which is relied upon to relieve the defendant from the charge of infringement. The gist of the Williams invention consisted in such a cut of vamp and quarter that the two overlapped or folded upon each other, and thereby the leak hole, at the junction of the Norris gore with vamp and quarter, was obviated. In the defendant’s shoe the vamp and quarter-overlap each other beneath the foxing. The cut of vamp and quarter, where the union is made, is a different cut from that of the Williams shoe. It is the cut of the Norris gore modified so that the vamp and the quarter shall overlap and make a tight joint. It avoids the defect of the Norris shoe by a form of cut not exactly like the Williams, but made-upon the same principle and not materially different in shape. There is, in fact, no relief from the charge of infringement, unless the Williams patent is narrowly limited to its peculiar pattern of vamp and quarter.
The Williams patent of 1875 is thus described in the specification : “My invention relates to that class of boots which, *687 are made of an outer and inner textile fabric, connected together by a layer of rubber. The main object of my invention is to furnish a rubber boot which fits well around the ankle, which may be easily put on and taken off, and which' is neat and attractive in appearance; and my invention mainly consists in a boot composed of an inner upper, fitted to the last, slitted upward from near the sole, and long enough to allow this inner upper, after vulcanization of the rubber, to be removed readily from the last, (or, what is in substance the same thing, to allow it to be readily put on or taken off the foot,) and of an outer upper which is cut so large that it does not require to be slit in order that it may be removed from the last or put on and taken off the foot. My improved boot consists, in fact, of an inner and an outer upper, and a suitable sole, the inner upper being made to fit the last, and, therefore, requiring to be slit open from near the sole upward, while the outer upper is made much larger than the inner upper, and requires the surplus stock to be overlapped and fastened in order to fit the boot closely to the ankle and leg.”
The patentee further says: “The novelty of the main feature of my invention does not lie, of course, in the patterns used, nor in the use of a folding gore piece, as it is obvious that the patterns may be largely varied, and the folding gore piece is well known. My inner upper must, however, be so cut as to permit it to be laid upon and conformed to the last or foot; and the outer upper must be cut as much larger than the inner upper as will provide for the overlapping of the front and rear sections thereof, and thereby guarding or covering the slit in the inner upper, and allowing the boot to be readily removed from the last, or be readily put on and taken off of the foot of the wearer, and at the same time admitting of the unison of. the outer edges of said overlapping portions of the front and rear outer upper in forming the water-excluding bellows flap. The parts of the outer upper which are not attached to the inner upper are caused to fit snugly by securing them by means of the leg and ankle straps shown, or other suitable devices.” One main difficulty to be avoided was that the shoe of 1872 could not be fitted *688 smoothly upon the last by reason of the flap pieces, and it was also desirable to line the flaps or ear pieces with a lighter material than that used for the shoe proper, so that they could be folded smoothly around the ankle. Novelty and patentability are not denied. I do not understand that any substantial defence is attempted to be made to the charge of infringement of the first claim.
Let there be a decree for an injunction and an accounting.